IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARK BROWN,

                Plaintiff,

  v.

JEFFREY MANLOVE, NANCY GARCIA, GAIL WALTZ, MARIROSE HOWELL, and ANN SCARPITA,

                Defendants.

OPINION & ORDER

16-cv-76-jdp

---

Pro se plaintiff and prisoner Mark Brown is proceeding on claims that medical staff at the Waupun Correctional Institution violated his rights under the Eighth Amendment by failing to give him appropriate medical care after he injured his hand in October 2015. Defendants have filed a motion for summary judgment, Dkt. 31, which is ready for review. Because no reasonable jury could find that any of the defendants violated Brown's Eighth Amendment rights, I will grant defendants' motion. *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 869 (7th Cir. 2001) (under Federal Rule of Civil Procedure 56, defendants are entitled to summary judgment if no reasonable jury could find in plaintiff's favor).

ANALYSIS

A prison official violates a prisoner's Eighth Amendment right to medical care if the official is "deliberately indifferent" to a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). The condition does not have to be life

threatening. *Id.* A medical need may be serious if it "significantly affects an individual's daily activities," *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997), if it causes significant pain, *Cooper v. Casey*, 97 F.3d 914, 916–17 (7th Cir. 1996), or if it otherwise subjects the prisoner to a substantial risk of serious harm, *Farmer v. Brennan*, 511 U.S. 825 (1994). "Deliberate indifference" means that the officials are aware that the prisoner needs medical treatment, but are disregarding the risk by consciously failing to take reasonable measures. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). In the context of a claim against medical professionals, deliberate indifference may be inferred only if the defendants' treatment decisions are "blatantly inappropriate" or represent "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on [medical] judgment." *King v. Kramer*, 680 F.3d 1013, 1018–19 (7th Cir. 2012) (internal quotations omitted).

Thus, a claim under the Eighth Amendment for failing to provide adequate medical care has three elements:

(1) Did the prisoner need medical treatment?

(2) Did the defendant know that the prisoner needed treatment?

(3) Despite his or her awareness of the need, did the defendant consciously fail to take reasonable measures to provide the necessary treatment?

On a motion for summary judgment, it is the plaintiff's burden to show that a reasonable jury could find in his favor on each of these elements. *Henderson v. Sheahan*, 196 F.3d 839, 848 (7th Cir. 1999). Defendants do not challenge Brown's ability to show that he had a serious medical need as to any of his medical care claims, so I need not consider that issue.

The undisputed facts make it clear that no defendant or anyone else was deliberately indifferent to Brown's serious medical needs. As an initial matter, Ann Scarpita (a nursing supervisor) was not involved in making medical decisions related to Brown's injured hand. Although Brown addressed letters to Scarpita, other members of the health care staff responded to those letters. In fact, it is undisputed that Scarpita was no longer working at the prison when Brown wrote to her. Because defendants cannot be held liable under the Eighth Amendment if they are not personally involved in the alleged constitutional violation, *Kuhn v. Goodlow*, 678 F.3d 552, 555 (7th Cir. 2012), Scarpita is entitled to summary judgment.

As for the remaining defendants, it is undisputed that Brown received prompt treatment after he injured his hand.[1] On October 21, 2015, defendant Gail Waltz, a nurse, examined Brown for complaints of pain and swelling in his left hand. Waltz observed "slight" swelling, bruising, and edema. Brown was able to make a fist and move all of his fingers. Waltz prescribed ice, and directed Brown to rest his hand and keep it elevated. She scheduled a follow-up appointment in one week. The following day, Brown received a prescription for acetaminophen.

In November 2015, medical staff took an x-ray of Brown's hand when he continued to complain about pain. The x-ray showed that Brown had "an acute left hand fifth metacarpal head/neck fracture, with no dislocation or destructive bony process." Dkt. 33, ¶ 25. As a result, Brown's hand was immobilized with a bandage wrap and his fourth and fifth fingers were "buddy-taped." Defendant Jeffrey Manlove, a physician at the prison, reviewed the x-ray

---

[1] Brown does not allege that any of the defendants caused his injury. He does not say how he hurt his hand, but defendants say he was "air boxing" in his cell and accidentally hit the door. Dkt. 33, ¶ 15.

3

results. He determined that "[t]he x-ray showed non-displacement and acceptable alignment and positioning of the fracture," suggesting that staff had acted appropriately by immobilizing the bone. Dkt. 34, ¶¶ 19-2.

Nursing staff changed Brown's bandages on November 20, November 27, and December 4, 2015, and continued to provide acetaminophen and ibuprofen for Brown's pain. On December 8, 2015, Brown was transferred out of the Wisconsin Department of Corrections.

Brown does not allege that he did not receive prompt treatment for his injury and he has not adduced evidence that his hand healed improperly because he did not receive the correct care. He alleges in his brief that "[t]he Defendants allowed Plaintiff's hand to continue to heal as a deformity," Dkt. 39, at 2, but he does not explain why he believes his hand is deformed or how any of defendants' conduct caused such a deformity. Instead, he cites documents showing results of two additional x-rays he received after his transfer. Dkt. #39-1. The first document, which is from December 2015, states that Brown suffered a fracture, but it also states that "no significant degenerative changes are seen" and that there is "no other acute bony abnormality" besides the fracture. The second document, which is from November 2016, states that "there is a prominent well-defined erosion at the ulnar aspect of the 5th metacarpal," but it also states that Brown's pain had been "worsening over the past 1.5 weeks," suggesting that the second x-ray showed a new injury. In any event, Brown fails to connect any findings in November 2016 with defendants' conduct in 2015 or otherwise show that the information available to defendants would have made it obvious that Brown needed more or additional treatment.

Brown alleges in his verified complaint that he did not receive "chronic pain medication" or "emergency treatment" for his injury. Brown does not explain what he means by these terms, but because he does not dispute that he received prompt treatment after he notified staff about hurting his hand or that he received acetaminophen and ibuprofen to treat his pain, I understand him to be contending that he should have been taken to the hospital and then treated with something stronger than acetaminophen and ibuprofen. In his brief, he alleges that defendants failed to contact "special medical experts on the matter," Dkt. 39, at 2, suggesting that he believes he should have been referred to a specialist. No reasonable jury could find that the Eighth Amendment required defendants to provide Brown any of those things.

As for emergency treatment or referral to a specialist, "a prisoner is not entitled to receive unqualified access to healthcare." *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). "There is not one 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Thus, if a prisoner believes that health care staff should have given him different or additional treatment, he must show that the decisions they made are "blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014). It is not enough that that the defendants or someone else "could do better." *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866 (7th Cir. 2013).

In this case, Brown has not adduced any evidence or even identified a reason that he needed to be taken to the hospital or referred to a specialist. Medical staff assessed Brown's injury and determined that it could be treated adequately with ice, rest, over-the-counter pain relievers, and a bandage wrap. Again, Brown does not cite evidence showing that his injury

5

failed to heal adequately because of defendants' actions or inaction, let alone that their medical judgment was blatantly inappropriate.

As for defendants' choice of pain reliever, medical staff have considerable discretion in determining the appropriate medication to prescribe, particularly when it comes to pain medication. *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("Using [pain killers] entails risks that doctors must consider in light of the benefits . . . . Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations."); *Banks v. Cox*, No. 09-cv-9, 2010 WL 693517, *7 (W.D. Wis. 2010) ("Although plaintiff may believe that he needed narcotic pain medication, the Constitution does not require prison officials to provide prisoners the medical care they believe to be appropriate; it requires officials to rely on their medical judgment to provide prisoners with care that is reasonable in light of their knowledge of each prisoner's problems."). In this case, as in *Holloway*, 700 F.3d at 1073, "[t]here is no evidence that [the defendants] intended to cause [the plaintiff] pain or that [the defendants] knew the [prescribed medication] would be insufficient to alleviate [the plaintiff's] symptoms. Moreover, [the plaintiff] did not present any evidence to show that [the defendants'] decision not to prescribe [narcotic medication] was a substantial departure from accepted professional standards."

The parties dispute one issue regarding pain medication. Brown disputes defendants' proposed finding of fact that Brown received a refill of his acetaminophen on November 7. But even if I assume that Brown did not have any acetaminophen for a time, he does not allege that any of the defendants were responsible for dispensing medication or even knew that he did not have his medication, so they cannot be held liable for that problem. *Kuhn*, 678 F.3d at 555.

Finally, Brown asks the court to "withhold any judgment until proper medical testing is ordered by this court." Dkt. 39, at 2. This request goes beyond the role of the court in the context of a civil lawsuit, but even if I construe the request as a contention that defendants did not conduct adequate testing of his injury, it would not be a ground for denying defendants' summary judgment motion. Brown does not identify what "testing" he believes defendants should have provided, why they should have provided it, or how the failure to provide that testing harmed him. Accordingly, I see no basis for concluding that defendants violated Brown's Eighth Amendment rights by failing to conduct additional testing.

ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants Jeffrey Manlove, Nancy Garcia, Gail Waltz, Marirose Howell, and Ann Scarpita, Dkt. 31, is GRANTED. The clerk of court is directed to enter judgment in defendants' favor and close this case.

Entered November 17, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge